UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KRISTIN A. CRAGE,                                         :

       Plaintiff,                                              :

   -  against –                                         :    **COMPLAINT &**
                                                                                     **JURY DEMAND**
                                                                                :

THE SCWARTZMAN ANIMAL MEDICAL CENTER,
PAUL GREENE, in his corporate and individual capacities,:    Civil Action No.
and NEIL McCARTHY, CAO, in his corporate and
individual capacities, HELEN IRVING, RN, MBA, in her  :    _____
corporate and individual capacities,
                                                                                 :

       Defendants.
------------------------------------------------------------------------X

     By and through her counsel, Jimmy M. Santos, Esq., of the LAW OFFICES OF JIMMY M. SANTOS, PLLC, Plaintiff, Ms. Kristin A. Crage, hereby avers against Defendants:

## I.    THE PARTIES; JURISDICTION & VENUE

1. Plaintiff Ms. Kristin A. Crage, a fifty-three (53) year old Sicilian female, ("Plaintiff"). She resides at 6 Page Avenue, #3A, Yonkers, NY 10704.

2. At all relevant times, Defendant, SCHWARTZMAN ANIMAL MEDICAL CENTER. (or "AMC"), is Plaintiff's "employer". AMC is located at 510 East 62nd Street, New York, NY 10065.

3. As per its website, "[AMC] is the world's largest non-profit animal hospital with 130+ veterinarians providing the highest quality medical care across more than 20 specialties and services. [It's] pioneering clinical research advances veterinary knowledge, and [AMC's] education programs train the next generation of veterinary leaders and provide pet owners with quality pet health information."

1

4. At all relevant times, AMC has twenty (20) or more "employees" within the meaning of that term as found in the Age Discrimination in Employment Act of 1967, i.e., 29 U.S.C. §§ 621, *et seq.,* (or, the "ADEA"), NY Executive Law secs. 290, *et seq.*, (the N.Y.S. Human Rights Law or "NYSHRL"), and NYC Human Rights Law (the "NYCHRL").

5. On or about May 6, 2023, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC").

6. It has been more than sixty (60) days since Plaintiff filed her charge with the EEOC.

7. Accordingly, Plaintiff has exhausted her administrative remedies with respect to her federal claims pursuant to the ADEA.

8. This Court has jurisdiction over Plaintiff's claims under the ADEA and 42 USC §§ 1331 and 1343.

9. The jurisdiction of this Court over Plaintiff's claims under the NYSHRL and NYCHRL is invoked pursuant to 28 USC sec. 1367(a) since Plaintiff's federal, state and NYC law claims all stem "from the same nucleus of operative fact".

10. Venue is proper in this judicial district (the "SDNY") since all of Defendants' unlawful employment practices and decisions alleged herein, and/or their adverse effects from these practices and/or decisions on the terms and conditions of Plaintiff's employment at AMC were committed and/or occurred within this judicial district.

11. In or about September 2021, Defendant The Schwartzaman Animal Medical

Center ("AMC") hired Plaintiff Kristin A. Crage (who, at the time, was 51 years old) and Nicole Trinler ("Trinler") (who, at the time, was approximately 30 years old) as Executive Assistants.

12. Plaintiff was assigned to be the Executive Assistant to respondent Paul GREENE ("GREENE"), CFO and Neil McCARTHY, CAO ("McCARTHY"). Trinler was assigned to work with Courtney Rabb, CSO and then CEO, Kate Coyne. All four of Plaintiff's and Trinler's supervisors met daily on the same issues.

13. At all relevant times, Plaintiff had more work experience and skills than Trinler. For example, at the time of her hiring, Trinler did not how to work with Microsoft Office; unlike Plaintiff who was proficient in Microsoft Office.

14. Moreover, at the time Trinler was hired, unlike the Plaintiff, Trinler had no idea how to create a Word, Excel or PowerPoint document and Ms. Crage had to help her frequently in using those applications in the beginning.

15. On or about November 7, 2021, Ms. Crage sent an email to McCARTHY and GREENE regarding the preferential treatment of Trinler over Plaintiff.

16. Despite Plaintiff's sending McCARTHY and GREENE the email, no remedial action was taken.

17. Unlike Trinler, Ms. Crage was never and/or most of the time included in matters having to do with the AMC's Board of Directors or the Executive team as a whole.

18. After the memo/email was sent, in fact, McCARTHY told Plaintiff that, "in the future, don't file a complaint with HR." Rather, Plaintiff was told to go to McCARTHY and/or GREENE.

19. Moreover, upon information and belief, unlike with Trinler, there was little

communication between Plaintiff and McCARTHY and Trinler.

20. Unlike Trinler, Defendants left Ms. Crage out of executive meetings. Ms. Crage was not even made aware of Executive/Board Meetings dates.

21. On or about June 10, 2022, Plaintiff sent Linda Faison of Human Resources ("HR") a Complaint/Memorandum, again, regarding the preferential treatment Trinler was still receiving and a project Plaintiff had worked on couple of months prior wherein Courtney Rabb (approximately late 30's) saw that the project was successful, wanted the credit and decided to take it over by stating it fell under her department.

22. Plaintiff was told by GREENE and McCARTHY that Plaintiff had to turn her project over to Ms. Rabb.

23. In a meeting between Ms. Crage, GREENE, McCARTHY and HR on June 22, 2022, the latter three (3) advised Ms. Crage that they were unhappy because Ms. Crage filed another complaint as to what Plaintiff was preferential treatment in favor of Trinler.

24. Ms. Crage told them that she wouldn't need to file a complaint if she were given the same respect and treated with equally as to their treatment of Trinler.

25. In the meeting, Plaintiff expressed that she felt like she was being treated like an "ugly duckling" or "old hag", as though she were lesser in value, unlike Defendants' treatment of Trinler.

26. Unlike Ms. Trinler, Ms. Crage was doing in-depth work such as, complex spreadsheets, overseeing legal cases, complex insurance cases and creating all the Presentations for the Board and Executive Meetings.

27. Despite this, and unlike Defendants' favorable treatment of Trinler, by this point,

Ms. Crage was still not included in anything having to do with the AMC's Board of Directors or the Executive team as a whole and had to ask two or more times to get the schedule for the meetings just so she could be prepared.

28. HR stated they were closing Ms. Crage's complaint without any action on any of the concerns she raised and that Ms. Crage's complaint would no longer be a matter that needs any attention.

29. Some of Ms. Crage's co-workers confirmed to her their belief that there was preferential treatment of Trinler over Plaintiff.

30. In or about late December 2022 and/or early January 2023, while Trinler was on maternity leave, Ms. Crage offered and helped anyone that needed assistance, however, she was still not allowed to interact with AMC's Board or take part in any executive meetings of which Trinler was involved as of the time she went on maternity leave.

31. Despite Ms. Crage being acknowledged for just a few of her several work accomplishments, Defendants showed continuous recognition of Trinler's work; unlike their lack of recognition of Plaintiff's accomplishments

32. At all relevant times, Ms. Crage's work performance was more than satisfactory and done in a highly professional manner. In the early part of 2022, Defendants issued Ms. Crage a performance evaluation with the highest marks across the board.

33. Despite Ms. Crage's superior work product and better work credentials and experience, Defendants' continued preferential treatment of Trinler and their discriminatory treatment of Plaintiff based on her age, on February 17, 2023, included Defendants giving Trinler a promotion to "Program Manager", and Executive Assistant to CSO.

34. Trinler had been hired as Executive Assistant to the CEO and CSO on the same day Plaintiff was hired as Executive Assistant.  However, in late January of 2023, Trinler also began assisting defendant Helen Irving ("Irving"), AMC's newly appointed CEO.

35. By February 21, 2023, Defendants still had not given Ms. Crage an annual performance evaluation since the early part of 2022 while Trinler received one in the early part of 2023.

36. Unlike Trinler who was being assigned more work and had been promoted, in June of 2022, Defendants began to take work away from Plaintiff, and by February 2023, Plaintiff was doing virtually nothing for GREENE and/or McCARTHY.

37. As early as November 2021, Plaintiff had yet to meet Nicole Seligman (one of AMC's Board Members who is also an attorney). Since Plaintiff was intimately involved in handling legal matters for AMC, Ms. Crage thought it would be a good idea to introduce herself to Ms. Seligman.

38. However, GREENE and McCARTHY refused to allow Ms. Crage to interact with any of the Board Members.

39. On March 3, 2023, Defendant Irving advised GREENE and McCARTHY that Ms. Crage had reached out to Ms. Seligman so that Ms. Crage and Ms. Seligman could meet.

40. On March 6, 2023, during Ms. Crage's Monday morning meeting with GREENE and McCARTHY, the only thing they wanted to address was whether Plaintiff had reached out to Ms. Nicole Seligman.

41. Plaintiff responded that she contacted Ms. Nicole Seligman simply to introduce herself since Ms. Segilman was an attorney and Ms. Crage handled the legal cases.

McCARTHY took a very condensing position at one point telling Ms. Crage something to the effect of - "I don't think you understand what we're telling you! You are being given a directive not to ever contact a Board Member again!"

42. McCARTHY also stated to Plaintiff something to the effect of - "I don't think I like your attitude!"

43. Ms. Crage responded by stating something to the effect of - "I'm being a strong, confident woman. Is that something you have a problem with?"

44. During this meeting, Plaintiff felt threatened and both McCARTHY and GREENE stated a few times that Plaintiff had to comply with their directive not to contact Nicole Seligman.

45. On March 9, 2023, Nicole Trinler asked GREENE if she needed her to help him set up a meeting between himself, Defendant Irving, the lawyers and Ms. Seligman.

46. Unlike Trinler, Defendants did not allow Plaintiff to contact the Board. Prior to March 9th, Plaintiff heard McCARTHY tell Ms. Irving statements to the effect of - "Okay, I'll have Nicole set this up"; "I'll have Nicole take care of this."

47. The pattern of Defendants' preferential treatment of Trinler and unfavorable treatment of Ms. Crage due to Plaintiff's age affected Plaintiff to the extent that she was experiencing significant emotional distress.

48. On that day, Plaintiff sent an internal email to Defendants and AMC's HR notifying them that she felt she was being subjected to age discrimination.

49. On or about late March 2023, in one of the Monday morning meetings with

McCARTHY, Plaintiff was advised that she also would no longer assisting with the SSI (Surgical Site Infection) reports and creating spreadsheets for same.  This was yet another job function removed from Ms. Crage.

50. When Plaintiff informed McCARTHY, he said, "Oh", and changed the subject to going over his schedule for the week.  Nothing else was discussed on this matter.

51. On March 28, 2023, in retaliation for Ms. Crage's March 9th internal complaint of age discrimination, even though Plaintiff was invited by an AMC client to participate in a zoom interview-meeting, GREENE intentionally excluded her from participating in the call.

52. On the same day, in retaliation for Ms. Crage's opposition to the age discrimination to which she has been subjected, in a meeting in which Plaintiff, Defendants Irving, McCARTHY and GREENE were present, Ms. Crage was told that the Plaintiff would now be making travel arrangements for the doctors and residents (i.e., approximately over 150 people), and thus, would serve as AMC's *de facto* travel agent and constituted a *de facto* demotion.

53. On March 30, 2023 – Ms. Irving sent an email to "all [the AMC] employees" stating that, in sum and substance, Ms. Crage would be AMC's *de facto* "travel agent". Believing that this was an act of retaliation, Plaintiff sent an email to Irving a few minutes after Ms. Irving's email and respectfully requested that she rescind the company-wide email.

54. At no time prior to the March 28th meeting was Ms. Crage asked to make travel arrangements for AMC staff.

55. On March 31, 2023. Plaintiff sent an email to HR, Irving, Ms. Rabb,

McCARTHY and GREENE stating that she felt she was being subjected to retaliation for making her prior complaint of age discrimination.

56. Plaintiff's 3/31/23 retaliation complaint states, in part:

Also, on 3/28/2023, I was called into the CEO's office with Paul and Neil (my supervisors) and told that I would be doing travel for all our residents and doctors. This would, in effect, render me a "travel agent" because we have over 300 doctors and residents. I was hired as an Executive Assistant, not a travel agent.

The other assistant, Nicole Trinler, who has an extensive travel arranging background, is promoted to "Program Manager" handling a software program and various construction issues and now I'm rendered to travel.

57. On 3/30/2023, before Plaintiff could express how she truly felt about this new "position", Irving sent an "all employees" email, without letting me know, stating that Plaintiff would be doing travel for our organization. Plaintiff felt ambushed and that it was Defendants' attempt to intimidate her into taking a position that is clearly a *de facto* demotion from her skill.

58. On April 6, 2023, although one of Ms. Crage's job duties included creating all the PowerPoint Presentations for the Combined Finance/Executive Meetings and Board Meetings and, normally would have received McCARTHY's and Ms. Rabb's markups a few days before the presentations, she did not receive any and was told by Ms. Irving that she would work with "the team".

59. Although there was a Navex meeting (i.e., a new program AMC was introducing) scheduled for April 11, on April 10, 2023, Ms. Trinler (Plaintiff's comparator) sent Ms. Crage an email stating that Plaintiff did not have to attend.

60. On May 4, 2023, in another act of retaliation by taking away Ms. Crage's duties

as an Executive Assistant, GREENE asked another AMC employee to create a 'sign-in' sheet for the 403(b) meeting that was held for all employees' floor conference room.

61. On May 5, 2023, as a blatant example of intentional retaliation and age discrimination, GREENE told Ms. Crage that he needed to change Plaintiff's schedule for the month of May in order to accommodate changes to Ms. Trinler's schedule.

62. Due to her age and because of her opposition to Defendants' engaging in unlawful age discrimination, Defendants have created and continue to create a hostile work environment designed to make Plaintiff's work conditions intolerable and which are/ were designed to make Plaintiff quit her job.

63. On May 6, 2023, Plaintiff filed a charge of discrimination with the EEOC.

64. Since then, in an effort to make Plaintiff's working conditions intolerable, Defendants took away most of her duties including but not limited to preparing for and supporting AMC Board Meetings, and creating the materials for Defendants to use at such Meetings, scheduling such meetings.

65. Since then, Defendants have taken away most of her duties to the extent that she has had to ask Defendants to give her work.

66. Since then, unlike all the other AMC employees including Tinler for which office space was made for her, Defendants have had Plaintiff work remotely from home.

67. Since Plaintiff's internal complaint of age discrimination and her filing a charge of discrimination on May 6, 2023 with the EEOC, Defendants have made Plaintiff's working conditions so intolerable to the extent that she has suffered a *de facto* demotion.

68. As a result of Defendants' age discrimination, and unlawful retaliation against

Plaintiff, Ms. Crage has suffered significant physical sickness and emotional distress for which she has had to seek treatment from a medical provider(s).

69. As a result of Defendants' failure to grant Plaintiff a promotion (and, upon information and belief, a salary raise) similar to that which was given to Trinler, Plaintiff has suffered economic losses, and will continue to suffer economic loss.

70. Defendants' acts of unlawful discrimination and retaliation were/are malicious and wanton, and Defendants should be punished and deterred by imposing punitive and/or liquidated damages against them.

71. Defendants' disparate treatment of Plaintiff due to her age and unlawful Retaliation are/were intentional in violation of the ADEA, the NYSHRL and NYCHRL.

### AS AND FOR PLAINTIFF'S 1ST CAUSE OF ACTION AGAINST DEFENDANT AMC FOR DISCRIMINATING AGAINST PLAINTIFF DUE TO HER AGE IN VIOLATION OF THE ADEA.

72. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "71" above.

73. As described in more detail above, through the acts of the individual defendants, Defendant AMC has subjected Plaintiff to disparate and inferior treatment (including but not limited to their *de facto* demotion of Plaintiff) in comparison to Plaintiff's younger co-workers, which was due, in whole or in substantial part, to Plaintiff's age in violation of 29 U.S.C. §§ 621, *et seq.*

### AS AND FOR PLAINTIFF'S 2nd CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR DISCRIMINATING AGAINST PLAINTIFF DUE TO HER AGE IN VIOLATION OF THE NYSHRL.

74. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "73" above.

75. As described in more detail above, all defendants have subjected Plaintiff to disparate and inferior treatment (including but not limited to their *de facto* demotion of Plaintiff) in comparison to Plaintiff's younger co-workers, which was due, in whole or in substantial part, to Plaintiff's age in violation of the NY Executive Law §§ 290, *et seq.*

### AS AND FOR PLAINTIFF'S 3nd CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR DISCRIMINATING AGAINST PLAINTIFF DUE TO HER AGE IN VIOLATION OF THE NYCHRL

76. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "75" above.

77. As described in more detail above, all defendants have subjected Plaintiff to disparate and inferior treatment (including but not limited to their *de facto* demotion of Plaintiff) in comparison to Plaintiff's younger co-workers, which was due, in whole or in substantial part, to Plaintiff's age in violation of the NYCRHL.

**AS AND FOR PLAINTIFF'S 4th CAUSE OF ACTION AGAINST DEFENDANT AMC FOR RETALIATING AGAINST PLAINTIFF DUE TO HER OPPOSITION AND COMPLAINTS THAT SHE WAS BEING SUBJECTED TO UNLAWFUL <u>AGE DISCRIMINATION AND RETALIATION IN VIOLATION OF THE ADEA.</u>**

78. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "77" above.

79. As described in more detail above, Defendant AMC subjected Plaintiff to unlawful retaliation (including but not limited to Defendant's *de facto* demotion of Plaintiff) due in whole or substantial part, to Plaintiff's opposition and complaints of being unlawfully subjected to age discrimination in violation of the ADEA.

**AS AND FOR PLAINTIFF'S 5TH CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR RETALIATING AGAINST PLAINTIFF DUE TO HER OPPOSITION AND COMPLAINTS THAT SHE WAS BEING SUBJECTED TO AGE UNLAWFUL DISCRIMINATION AND RETALIATION IN VIOLATION <u>OF THE NYSHRL.</u>**

80. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "79" above.

81. As described in more detail above, all defendants subjected Plaintiff to unlawful retaliation (including but not limited to Defendants' *de facto* demotion of Plaintiff) due in whole or substantial part, to Plaintiff's opposition and complaints of being unlawfully subjected to age discrimination in violation of the NYSHRL.

### AS AND FOR PLAINTIFF'S 6TH CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR RETALIATING AGAINST PLAINTIFF DUE TO HER OPPOSITION AND COMPLAINTS THAT SHE WAS BEING SUBJECTED TO AGE UNLAWFUL DISCRIMINATION AND RETALIATION IN VIOLATION OF THE NYSHRL.

82. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs "1" through "81" above.

83. As described in more detail above, all defendants subjected Plaintiff to unlawful retaliation (including but not limited to Defendants' *de facto* demotion of Plaintiff) due in whole or substantial part, to Plaintiff's opposition and complaints of being unlawfully subjected to age discrimination in violation of the NYCHRL.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court empanel a jury of her peers and enter judgement against Defendants as follows, in an amount to be determined at trial, inclusive but not limited to:

(a) an award of back and front wages and full compensatory damages against defendants for their unlawful discriminatory and retaliatory acts against her in an amount to be determined at trial, including payment for Plaintiff suffering severe physical and mental distress and injury, mental anguish, humiliation, and embarrassment from defendants' unlawful discriminatory and retaliatory acts under the ADEA, the NYSHRL and the NYCHRL;

(b) an award of liquidated and/or punitive damages against all defendants for their

intentional and malicious unlawful discriminatory and retaliatory acts against Plaintiff in an amount to be determined at trial under the ADEA, the NYSHRL, and NYCHRL;

(c) an award of Plaintiff's reasonable attorney's fees and the costs of prosecuting this action under 42 USC sec. 1988, 42 USC sec. 1981a, the ADEA, the NYSHRL and the NYCHRL; *and*

(d) any such other and further relief that this Court may deem just and proper.

Dated: October 10, 2023
        Cornwall, New York

Respectfully Submitted,

*Jimmy M. Santos*
_____
Jimmy M. Santos, Esq. (0947)
LAW OFFICES OF JIMMY M. SANTOS, PLLC
28 Wilson Place
Cornwall, New York 12518   `
Telephone: (845) 537-7820
Fax:   (845) 595-2266
Email: jmssesq@gmail.com
*Attorney for Plaintiff Ms. Kristin Crage*